I love that cry. Good morning, ladies and gentlemen, and please excuse us for being late. We will go on with the cases as they appear in the day sheet. Counsel for appellants should know that if you want to reserve time for rebuttal, keep an eye on the clock because we won't remind you. So the first case we'll hear today is Edgar Yandario Cabrera Avalos. Good morning, Your Honors. My name is Howard Davis, and I represent the Petitioner Edgar Cabrera Avalos, and I'd like to reserve about two minutes for rebuttal. You represent Mr. Cabrera, not Mrs. Cabrera, right? Yeah, just Mr. Just Mr., okay. Just Mr. First of all, the board's 2016 decision erred in calling the challenge to the 2013 decision an untimely motion to reconsider. So as the government points out in its brief, the issue boils down to the issue of finality. Was the 2013 decision a final decision? And in this case, it's a little different than the cases that stand for the proposition that if all that the board is remanded for is voluntary departure, that's final enough. All the substantive issues have been resolved. So in a particular case like Castrojon, Pinto and the difference that he was consolidated with his wife's case? That's one of the differences. But another difference, and I'd like to discuss a little bit more, is, first of all, nothing was said with regard to him. He wasn't specifically sent down for voluntary departure, unlike in those other cases. Nothing was said about him. So therefore, when the board remanded, the board did mention, you know, remanding for the wife's case, but it did not use, did not exclusively say that it was for the wife's case. So that leaves open the possibility of the other possibilities. So that's one of the differences. Even if he doesn't specifically say what it doesn't apply to, that it may apply to him? Yeah. I mean, if there isn't that language of exclusivity, that it wasn't exclusively  Sotomayor, what case do you rely on? Well, I relied on Patel. But what I think, what I, I mean, and also I think in Pinto, when the Court talked about that. I don't under, just looking at the 2013 decision, I don't really understand your basis for saying that. It says the lead Respondent did not meet his burden of establishing that he did not assist, persecution, et cetera. And then it talks about the female Respondent. But isn't it very clear that they're saying he's barred from cancellation of removal and special rules cancellation of removal under NACARA? But the thing is, is that, is that there were, where there was the possibility of, of unresolved issues. Because one thing is. But what was the unresolved issue? First, okay. I just wanted, and I know I'm not directly exact to answer your question, but there is a certain confusion here about this. Because if you turn to page 119 of the, of the record, and this is, this is when the case was down on remand back before the judge in San Francisco. And so the judge says, Counsel, you've heard my decision. Since this matter has already gone to the BIA, it's my understanding the Department can appeal my voluntary departure order if they like. And that Counsel, and this is the key line, you are free at this point to proceed to the Circuit Court of Appeal for a review of the BIA's order dated April 10th, 2013. So the judge herself was thinking that, that that order, the board's two. But that might have been before our Singh decision and these other cases that resolved this issue, right? That was in 2014. Wasn't Singh more recent? I mean, since then, we've had more decisions. Singh is in 2016. Correct. It is more, but at that time, I mean, one can only act on what was going on under the law. At that time, the law in that sense was, was not clear. So at that time, there's an, there's the argument there that, you know, that that was final as of that date. But the other. And that might, that might be a reason for some sort of equitable tolling. It seems unfair, but I think Singh says there's no equitable tolling in this context. It's a jurisdictional issue, right? Well. So I, I'd like to go back to my first question about whether he was joined with the wife's case in some way that makes a difference. So procedurally, after the 2013 decision, could he have appealed without his wife? I don't quite know the procedures when you have a consolidated case. Or did he need to ask to have the case severed so he could appeal? So it's, I mean, and that was my understanding, is that his case was consolidated. I mean, that's also another difference with the other cases. They were not consolidated with something else. But when you have a consolidated case, can you appeal with just one Petitioner and have the other one remand? I have to say, Your Honor, I don't have an answer for that. If we could have supplemental briefing on that, that could, I would be glad to do that. But I fear it doesn't help your client anyway, because even once the cases were severed, he didn't appeal within 30 days. But I do wonder. He did, actually. He did. He did go to the board. So in that sense, yes, he didn't go to the Ninth Circuit on that, within 30 days. But he did file a timely notice of appeal to the board. So that could, and the board interpreted that as not a direct appeal, but as a motion to reconsider. And so, but he just called it untimely. But the other thing that one of the things, and this is a point that I was making in an earlier part of the brief, is that the judge, all that the judge, the immigration judge did was to find that the Department of Homeland Security did not meet its initial burden prima facie to show that the persecutor bar fit. And that's where she ended. And then in the decision the BIA reversed that aspect of the judge's decision. What it should have done, I think, procedurally, was then to remand to the judge, because the burden was never shifted to the Mr. Cabrera at the trial level to show by preponderance of the evidence that he didn't fit within. This is the problem. Whatever was wrong with the 2013 decision needed to be appealed within 30 days of 2013. But as a matter of law, there was an unresolved issue. As even though it's not, in that sense, it's not like the cases where, let's say it was a one-year issue and the asylum withholding was granted, and then the judge, then they, then the board affirms the denial on, of the asylum based on the one year, and then it's sent back for background checks. I mean, there, but still, but as a factual matter, there may not have been a sort of an issue to be resolved. But as a matter of law, it should have been remanded to the judge. But that's an objection you have to what the BIA did in 2013, right? That would have been an issue on, definitely would have been an issue on appeal. And, of course, actually that's what I wrote about. But at the same time, there could have been other issues on remand. The possibility of a motion to reopen for the only relief that he would have been eligible for, which was CAT deferral. Now it's true in an earlier part of the procedure that he withdrew the I-589 asylum application, but he could have gone with a motion to reopen before the judge and change country conditions as it relates to CAT deferral, for which he would have been eligible. That would have been a possible relief, even though in the end he did not. But that would have been true in some of these other cases, Singh and Rizza over two, that someone might have brought a new claim, right? And that didn't mean we didn't say it wasn't fine. Well, but in those cases, the court held that it was sent only back for voluntary departure. Right, but someone could have argued there, but they could have asked to reopen, right? But they did not. And I see that I'm under my two minutes here, so. Good morning, Your Honors, and may it please the Court. Daniel Smula on behalf of the United States Attorney General. The Immigration Nationality Act permits a noncitizen to file one motion to reconsider within 30 days of an order, a removal order's issuance. Petitioner here filed his motion to reconsider approximately 18 months after that 2013 BIA decision issued. Under those circumstances, the Board acted well within its discretion in denying his motion to reconsider, which is how it was properly construed, based on the fact that he was untimely. There is, of course, the issue, I think counsel and I both agree, as to whether the 2013 decision was a final order. But the issue, in the government's perspective, is rather clear that it was, in fact, a final order of removal. There was, and then that's so under this Court's case law, beginning, really Pinto, I think, makes it most clear. That's a 2011 decision, which predated all of the relevant proceedings here and preceded the Court's decision by approximately two years. Pinto makes clear that there is an exception for a voluntary departure remand, that in such a case, there the — let me back up for a moment. In a case where a remand is for voluntary departure only, the order is, in fact, final. That case law persists today, and although the Court has clarified what constitutes a final order of removal and some other issues, Abdi Salon most evidently, Pinto survives, and Abdi Salon makes that clear and footnote. So none of these cases involved a consolidated situation, though, like he had with his wife, right? Yes. So could you answer my procedural question that I was trying to ask your opposing counsel about how do you appeal when you have a consolidated case? Sure. Well, how do you appeal? I suppose the question is, and let me be clear, appeal to this Court or appeal to the Board of Immigration Appeals? Well, so in the 2013 BIA decision, they remanded the wife but have a final decision as to him, really, as your position. But so the wife has still ongoing proceedings. So, like, if it was, you know, summary judgment or some other thing, we might have a situation where we don't have a final decision. But our case law says it was finalized to him, but it wasn't finalized to the wife, and they're all in one case. So did he need to ask to sever? Like, what was supposed to happen so that he could appeal to us at that point? Well, once the 2013 issue order from the Board issued, it was under Pinto his responsibility, if he so chose, to file a petition for review within 30 days of that order. And could he have done that without severing, or did he need to also first ask to sever? He did not need to first ask to sever, because he had a final order of removal. Under Lolong in Pinto, essentially the language is that that decision eliminated any impediment to the execution of that removal order. So once that ---- Except as to him, but I don't think any of those cases dealt with a single proceeding that has more than one Petitioner. Yes. That's correct. So the wife certainly, at the time of 2013 decision, did not have a final removal order as to her. She had subsequent proceedings. She was statutory eligible at that time for cancellation of removal. I'll call it, for lack of a better term, regular cancellation of removal. A citizen of Mexico is not eligible for NACARA. So she was only eligible through her husband, if you follow me, because he was a citizen of Guatemala. Those nationals are eligible. Mexican citizens are eligible for just cancellation of NACARA. But we don't have any case that involves exactly these facts. I mean, it was finalized to him. Yes. It wasn't finalized to her, but it's one case. And if he appeals to the court of appeal, can't the Immigration Service take the position that it's not right because there are still matters pending in this case before the BIA to wit the wife's case? There are not matters with respect to the wife. Now, if there are matters with respect to the wife. Well, excuse me. I misspoke. There are matters. Absolutely, there are matters with respect to the wife. There are not with respect to him. So at that point, it is a final order under Pinto. Theoretically, if the Court were to come up with a new rule in consolidated cases, February 14, 2014, when the IJA issued her voluntary departure order and technically severed the case as to the wife, may have been, may be construed theoretically as a final order as to both of them, because in that case they are formally severed before the agency. But it can't be. Well, wait a minute. The agency grants a voluntary departure as to him. Yes. And you say that that affects a severance of the case? During that hearing, she did two things. The immigration judge did two things. One, she granted the male Respondent or the male Petitioner voluntary departure, and she severed the case so proceedings would continue as to the female Petitioner or, excuse me, the wife. So the question is, he's got 30 days from that point in which to seek an appeal? At best, Your Honor. But really, there is, again, under Pinto, Singh, and Rizzo, all matters relating to the male Petitioner were wrapped up in February, excuse me, in 2013, when the Board issued its decision. So I understand. So he's untimely either way, right? Because he didn't petition within 30 days of the severance. But what do you think is the better rule? I mean, would it be better to say that until it was severed, he really had an impediment to appealing, so the time started running once the case was severed? There was no impediment as to the male Respondent. And there was no, I mean, I appreciate the point that the record tends to follow the case, and there was a new record at that point as to the female, as to the wife. The male's case, the Petitioner here, everything was concluded as to him as of February 13. There is no reason that the agency, Executive Office for Immigration Review, could not have sent their administrative record as to the male up to this Court at that time, and the Court would have a fulsome review of the entire record as to the case. So are there any cases you can point us to where a consolidated case had an appeal to our Court and a remand at the same time? I'm not aware of any, no, Your Honor. I'd have to look. Again, Your Honor, there is no real administrative impediment to doing that. The case as to him is over at that point. And just as in Pinto, although it was remanded for voluntary departure, and the record still did follow, you know, it was still before the agency for any type of voluntary order, departure order that issued, he was still obligated to appeal within 30 days of the Board's order. I don't think there's a principal distinction here between Pinto's requirement to file, notwithstanding a voluntary departure remand. So do I remember correctly that the government's position used to be that you didn't like our rule in this area? So I think the government used to think this was a bad way to go about this, right? Is that no longer the government's position? That's correct, Your Honor. We've tried a few different times. Rizzo, I think, is the most obvious example of advocating. We thought Addis-Salaam should rule or control all cases just for the sake of clarity. The court disagreed, as courts tend to do. So, yeah, it is an awkward situation that I think he legitimately was confused, and the government even thought he had a right to be confused. And now we have to say, well, that's just too bad because there's no tolling. Is that where we are? That is where we are. I mean, to the extent it's viewed as awkward, I come back to Pinto, Your Honor, where it was clear voluntary departure remands, you have to petition prior to that. You have to petition when the board issues its decision. Pinto has not changed throughout all. There have been further clarifications without doubt, and the government has tried to understand and carve out a position. With respect to what constitutes a final order, Pinto has not changed. It remains good law. It was the law at the time. It remains the law today. So they're really, you know, he has that obligation, and the law at the time was quite clear. I'll note as well the 2013 decision of the board is somewhat interesting insofar as it's not a remand for voluntary departure. It's you're out of luck. You are not qualified. You are a persecutor of others, and you are barred for that reason. There's no mention of voluntary departure until really 2014, February 2014. Decision hearing with the immigration judge, where prior to that, counsel did really quite good work in terms of saying, okay, we'll go along. DHS went along with voluntary departure. That's a great benefit to this petitioner to have been granted that relief, even in the absence of any type of remand from the board. He hadn't asked for it before, in the immigration court before the immigration judge even issued her decision in the first instance. And, you know, following a remand ---- So is that even a further argument for why the time should have run from that 2014 decision? I mean, it is sort of interesting that there were actually further proceedings in his case than ---- There were further proceedings only as to voluntary departure. Although sort of ---- Which is pinto. ----sua sponte, it sounds like. I mean, or like without it being instructed to do that. I mean, it's a little odd, right? Usually it's a remand for voluntary departure, but so this sort of shows something new could come up after the final decision. The only thing that could come up was voluntary departure, however. And it did, likely through excellent advocacy by his counsel. This was not really contemplated prior to that. So he gets a great benefit. And really the fact that he gets this great benefit does not change pinto. I mean, had the BIA articulated it, had the BIA articulated voluntary departure remand, we'd be in the same, precisely the pinto situation. Here, of course, he got this extra benefit, but pinto, in fact, controls. I see that I'm out of time. If there are no further questions. Thank you, Mr. Member. Thank you, Your Honor. All right. Let's give him two minutes for rebuttal. Just a couple of things. The ---- Judge Freeland, you mentioned Singh. And I'm noting and I'm assuming you're referring to 835, Fed Third, 880. But there is a footnote, 882, footnote 4. And when I look at the footnote, it recognizing that of desalons broadly stated, conclude it's created some tension with pinto. So we're going back. There was definitely confusion. The problem we have is Singh then says, you know, you're out of luck, and there's no equitable tolling. So it's just this very difficult situation at this point. It is confusing. A number of people were confused. The judge was, in this regard, the judge was confused. Petitioner and counsel were confused. Everybody was confused. Is that in the record? They all said they were confused? No. That's my, that is my characterization of that. I see. So you're not saying they're all confused. No. What I'm saying is, is that everybody, it seemed that, yeah. And so I misspoke there. That is my interpretation of what's in there. I didn't see it in the record. But the judge is seeing that. Obviously, the judge implied that that February 2004 date, 14th date, was a final decision. But the thing is, is that, you know, the Board could have at least, and I know in general the Court doesn't have jurisdiction over this, but, you know, the Board could have taken it, exercised its sua sponte jurisdiction and just looked at the motion. It didn't even do that. It didn't even mention it. So, anyway, in the end of the day, he hasn't had his, originally his case was granted. He got voluntary departure, which is, yeah, it's a benefit, not really a benefit. It's just, in the end, another way of saying goodbye. And so it's. No, there's more to it than that. He can say hello again. That's a great benefit. Not with the persecutor bar. And, anyway, in the end of the day, he didn't get his review before this Court.  Thank you, Your Honors. The Court appreciates the argument of counsel, and the case of Cabrera-Avalos is submitted for decision.
judges: Wallace, Bea, Friedland